IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VALERIE NORWOOD § | |
| § | |
| v.  § | A-09-CA-940-JRN |
| § | |
| CHASE HOME FINANCE LLC § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE JAMES NOWLIN
     UNITED STATES SENIOR JUDGE

Before the Court are: Defendant Chase Home Finance LLC's Motion for Summary Judgment and Brief in Support Thereof (Clerk's Doc. No. 19); Plaintiff's Response to Defendant's Motion for Summary Judgment (Clerk's Doc. No. 20); and Defendant Chase Home Finance LLC's Reply Brief in Support of its Motion for Summary Judgment (Clerk's Doc. No. 22). The District Court referred all pending and future motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned submits the following Report and Recommendation to the District Court.

**I.     Introduction**

Valerie Norwood filed the instant suit seeking a declaratory judgment that Chase Home Finance (CHF) lacks the authority to foreclose on her mortgage. Norwood signed a Note and Deed of Trust with Chase Bank USA, N.A., and after she stopped making her monthly payments on the loan, CHF sought to enforce the lien on her home through its agents at Barrett Daffin Frappier

Turner & Engel, LLP.  Norwood concedes that she defaulted on the loan, but argues that only Chase Bank, not CHF, has the authority to foreclose on her home.  Whether the Court may grant summary judgment hinges on a single question: Does CHF have the requisite authority to enforce the lien?

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are

not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III.   Factual Background

The factual basis stems mainly from a series of documents: the original Note and Deed of Trust signed by Norwood and Chase Bank, the assignment of the Note from Chase Bank to CHF, the power of attorney signed by a bank executive, and the partnership resolution of Barrett Daffin Frappier Turner & Engel, LLP. There are no factual disputes regarding these transactions. The documents indicate that Norwood took out a home equity loan with Chase Bank, N.A. on May 17, 2007, for $83,500. She secured the loan with her home. After encountering financial difficulties, she stopped making her mortgage payments. On May 29, 2009, CHF sent Norwood a notice of default and intent to accelerate.

CHF, not Chase Bank, sent notice of the default and intent to accelerate because Chase Bank "assigned and transferred" its rights to CHF via a written assignment. The assignment purports to

be effective as of May 12, 2009, but it was signed before a notary on June 16, 2009. Norwood does not allege that the notice was deficient nor that she was not in default on her loan; however, she argues that the assignment from Chase Bank to CHF was ineffective and therefore CHF cannot enforce the mortgage.

The crux of Norwood's argument centers on possession of the Note. Norwood argues that CHF has not demonstrated that it possessed the Note throughout the contested period. In response, CHF denies her allegations, yet it noticeably fails to offer any evidence regarding who possessed the Note during this period, or who currently possesses the Note. In a footnote in its brief, CHF alludes to the Note's location by stating that "CHF provided [CHF's counsel] with the original Note executed by Plaintiff, so that it could be made available for Plaintiff's inspection." CHF's Reply at 3 n.1. This statement is unsworn, and there is no summary judgment evidence to support the statement. The Court is not under a duty to "sift through the record in search of evidence," *Adams*, 465 F.3d at 164, and thus it will not draw a factual inference based on an unsworn footnote, particularly given that it must take all evidence in the light most favorable to Norwood.

Rather than provide summary evidence proving it had or presently has possession of the Note, CHF offers legal arguments to demonstrate that it is exempt from the possession requirement. Because CHF centers its motion on whether it is legally required to have possession of the Note before it may enforce it, the Court will focus its analysis on that question.

**IV.    Analysis**

The law authorizing who can enforce a negotiable instrument remains unsettled. Statutorily, the Texas Business and Commercial Code sets out an apparently straightforward list of four types of entities that may enforce an instrument: (1) a holder of the instrument, (2) a nonholder in

4

possession of the instrument who has the rights of a holder, (3) a person not in possession of the instrument who is entitled to enforce it as a lost, destroyed, or stolen instrument, or (4) a person not in possession of an instrument from whom a prior payment on the instrument has been recovered. TEX. BUS. & COM. CODE §§ 3.301, 3.309, 3.418(d).

These statutory provisions focus on possession. The Texas case law elaborating who is authorized to enforce a negotiable instrument, however, expands beyond the four provided categories in certain circumstances and departs from a possession requirement. For example, "even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment." *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex.App.—Houston [1st Dist.] 2004, no pet.). Common law principles of agency may also allow enforcement of a note by one not in possession. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 443 (Tex.App.—Houston [14th Dist.] 2003, no pet.). This led at least one court to state that "we cannot say a court would never uphold enforcement of a note by an owner who was not in possession of an original note." *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 864 (Tex.App.—Dallas 2005, no pet.).

Both sides rely most heavily upon this latter case. Yet *Nelson* contains a factual scenario so dissimilar from the instant case that it does not answer whether CHF must have possession to enforce the Note. Nelson purchased his son's note from Regions to prevent foreclosure after Regions accelerated the maturity of the note and listed the property for foreclosure. *Id.* at 860. Nelson received an assignment of the mortgage and copies of the note and deed of trust. *Id.* His son stayed in the home, although he did not make payments to Nelson, and Nelson never attempted to enforce the note against his son. *Id.* Four years later, Nelson filed suit against Regions attempting to rescind

5

the transaction, arguing that because he never received possession of the original note, he was not legally entitled to enforce it, and thus he did not receive consideration and could rescind the contract. *Id.* at 863–64. The court disagreed, stating that while Nelson was not a "holder" of the note under the Texas Business & Commerce Code, Texas law provides that "even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment." *Id.* at 864. Importantly, the court did not address whether Nelson had the authority to enforce the note because he never attempted to do so. If Nelson had attempted to enforce the note, then the court would have a factual record on which to base its decision. By refusing to attempt to enforce the note, Nelson waived his argument that he could not have enforced it if he had tried.

CHF argues that *Nelson* grants a party lacking possession of a negotiable instrument the authority to enforce a note. CHF reads *Nelson* too expansively. The *Nelson* court relied on two cases creating exceptions to the rule requiring possession: (1) *Leavings*, where the court allowed an assignee to enforce a note, *Leavings*, 175 S.W.3d at 309; and (2) *Aquaduct*, where the court allowed an agent to enforce a note, *Aquaduct*, 116 S.W.3d at 443. Both of these courts justified their departure on common law principles, one on principles of assignment, the other on principles of agency. *Nelson*, 179 S.W.3d at 864. The *Nelson* court only concluded that if another common law principle applied, notably equity, a court *might* allow another exception from the possession requirement. *Id.* However, it did not need to reach that issue, and was instead noting only that Nelson could not rescind his acquisition of the note on the basis of his inability to enforce it without possession when he had not actually attempted to do so.

Other courts have offered a examples of when a person is authorized to enforce a note when he is not a holder. These cases examine the authority of "owners" and people who have "acquired" a note by "transfer." For example, CHF cites a Fifth Circuit case, applying Texas law, in which the court allowed an "owner" who was not a "holder" to enforce a note. *SRSB-IV, Ltd. v. Cont'l Sav. Ass'n*, No. 93-2377, 1994 WL 487237, at *4 (5th Cir. Aug. 18, 1994) ("Even if the FDIC is not the holder, it can enforce the note if it is the *owner*.") (unpublished) (emphasis added). In the *SSRB-IV* case, however, the FDIC had possession of the note. *Id.* at 5. Even with possession, the FDIC did not automatically become an owner. *See id.* at 5 n.17 ("Mere possession of a note payable to the order of another is not sufficient evidence to prove that one is the holder or owner.") (citing *RTC v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)). The court emphasizes the importance of possession: "A transferee of a note who has not yet acquired *possession* of it is not the holder of the note and therefore does not have a holder's right to receive payment of the note." *Id.* at 4 n.13 (emphasis added).

Even without the "holder's right to receive payment," an owner may enforce a note. *Id.* at 4. But this requires a party to "prove the transaction through which the note was *acquired*." *Id.* (emphasis added). While these cases allow non-holders to enforce a note, they do not eliminate possession requirements. The rationale for the strict requirement of possession is to protect the obligor from being subject to multiple demands for payment on a single note. *See Camp*, 965 F.2d at 29 (explaining that mere possession is insufficient because a later party may demand payment). Without procedural safeguards, multiple parties could force the debtor to pay the note. If the original note is a prerequisite for enforcement, however, then a later party faces a significant hurdle before it may enforce the note. The exceptions listed above follow this reasoning. If the original note was

destroyed, then no one has possession and the debtor would not have to repay the loan. If the principal has possession of the note, then the agent has constructive possession and may enforce it. While the courts do not always require possession, the scenarios where they depart from the general rule relate to an alternative form of possession. The cases CHF relies on for its legal arguments stem from unique circumstances: in *Nelson*, a father purchased his son's note and then never attempted to enforce it; in *SRSB-IV*, the Government took possession of the notes after the savings and loan crisis; and in *Aquaduct*, the assigned servicing company failed to forward the borrower's payments to the lender. The instant case, however, does not involve a similar fact pattern.

At first glance, it might be argued that requiring proof of possession in this case would not further the policy behind requiring possession. CHF and Chase Bank are related entities, so the risk of duplicative payments seems slight. However, banks often sell blocks of notes to other banks. The close relationship between CHF and Chase Bank does not grant CHF clemency from demonstrating that it possesses the Note. Because CHF fails to present any evidence regarding possession of the Note, it is not a holder in due course. TEX. BUS. & COM. CODE § 3.201.

CHF's last ditch attempt at summary judgment is based on the assertion that even if it is not a holder, it was still authorized to enforce the Note as an assignee of Chase Bank. On October 2, 2008, Ralph Garardi,[1] a vice president of three entities—CHF, Chase Bank, and JP Morgan Bank—signed a limited power of attorney. This document grants the law firm Barrett Daffin Frappier Turner & Engel, LLP the authority to prosecute and dispose of loans, including Norwood's Note. CHF argues that this assignment provides sufficient authorization for its attempt to foreclose

---

[1] The Court did its best to decipher the vice president's last name. CHF, perhaps realizing the difficulty in decrypting his name from either his signature, his printed name, or the notary public's statement, simply refers to him as "a vice president."

on Norwood's home. This agreement may create an agency relationship between Chase Bank and the law firm, which could allow the law firm to enforce the Note as an agent of Chase as in *Aquaduct*, but it does not create an agency between Chase Bank and CHF, nor does CHF argue in its motion that it does so. Rather, CHF asserts that it owns Norwood's Note. *See* Declaration of Thomas Reardon ¶ 6 ("Pursuant to an Assignment of Note and Deed of Trust, CHF is the current *owner* and mortgage servicer of the Note and Deed of Trust.") (emphasis added). More to the point, the problem with Garardi's declaration is that it fails to demonstrate—indeed the entirety of CHF's summary judgment evidence fails to demonstrate—which, if any, of these entities possesses the Note. For our purposes, proof of agency is irrelevant without proof that the principal possesses the negotiable instrument.

Because CHF has not produced evidence when, if ever, it had possession of the Note, or that the instrument was lost, destroyed, or stolen, or that any other recognized exception to the requirement of possession exists, it has failed to carry its burden in demonstrating an entitlement to summary judgment. CHF denies Norwood's contention that a physical transfer was not made from Chase Bank to CHF, but it does not affirmatively demonstrate that the Note was in fact transferred. CHF, as movant, bears the burden of demonstrating its entitlement to summary judgment. It has failed to carry this burden.

**VI.     Recommendation**

For the reasons set forth above, the undersigned RECOMMENDS that the District Court DENY CHF's Motion for Summary Judgment on Norwood's claim for relief.

## VII. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C) (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of January, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE